## NELSON v. GALPIN.

1. PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—CORPORATIONS—
   RATIFICATION—CONTRACTS.

   Gas company *held*, the undisclosed principal, of, and bound as if
   named in, contract made with plaintiff to drill wells on, lay
   pipe lines to and take sufficient natural gas from, his leasehold
   to satisfy needs of obligor for 10 years in given territory where
   preponderance of evidence established fact that acts of com-
   pany's president in verbal arrangements for the contract and
   its acceptance were acquiesced in and ratified by board of direc-
   tors by resolution and otherwise.

2. GAS—CORPORATIONS—ULTRA VIRES—CONTRACTS.

   Contract to drill well for natural gas on plaintiff's leasehold, lay
   a pipe line thereto in the event a producing well resulted and
   take therefrom all requirements of obligor for sale and dis-
   tribution of natural gas within designated territory *held*, not
   *ultra vires* of corporation organized to manufacture, generate,
   distribute and sell gas for light, heat and power, the term
   "gas" not being confined to manufactured gas.

3. APPEAL AND ERROR—CORPORATIONS—ULTRA VIRES CONTRACTS.

   Where contract is held not *ultra vires* it is unnecessary to pass
   upon question of whether plea of *ultra vires* is open to corpora-
   tion under statute (Act No. 327, § 11, Pub. Acts 1931).

4. ASSIGNMENTS—PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—
   REVOCATION.

   Assignment of contract to drill gas well, lay pipe line and take
   natural gas, made by nominal obligor to one corporation for
   purpose of relieving nominal obligor of personal liability there-
   under *held*, without effect where another corporation is found
   to have been the undisclosed principal and nominal obligor's
   authority had been revoked prior to assignment.

5. CONTRACTS—ILLEGAL CONTRACTS VOID.

   A contract made in violation of law is void.

6. SAME—REGULATORY STATUTE—NATURAL GAS.

Gas company which contracted with plaintiff to drill wells on his leasehold, lay pipe lines thereto and take natural gas therefrom is *held*, to be charged with knowledge of statute regulating corporations or persons transporting natural gas through pipe lines (2 Comp. Laws 1929, §§ 11632–11651).

7. MINES AND MINERALS—NATURAL GAS—STATUTES—CONTRACTS.

In suit for specific performance of contract whereby gas company was to take such natural gas from well or wells on plaintiff's leasehold to satisfy *all* of its requirements and plaintiff was not to sell to other purchasers until *all* of the company's requirements were satisfied, contract *held*, not invalid as contrary to common purchaser and common carrier provisions of statute regulating business of transporting natural gas in pipe lines and setting maximum flow, notwithstanding such flow in only well drilled was insufficient to satisfy company's needs (2 Comp. Laws 1929, § 11638).

8. SAME—CONTRACTS—NATURAL GAS—MAXIMUM FLOW.

Contract for purchase of *all* of gas company's requirements of natural gas from plaintiff *held*, not in contravention of statute providing maximum legal amount of flow from one well where good cause is shown for exercise of discretion of public utilities commission to grant its permission to use a higher flow (2 Comp. Laws 1929, § 11638).

9. CONTRACTS—VIOLATION OF STATUTE—ESTOPPEL.

Party which has violated a regulatory statute in a certain particular is in no position to assert nonliability under a contract on ground that it is void because it violates the same statute in the same particular.

10. SAME—DEFAULT—CANCELLATION—SCOPE OF NOTICE.

A notice of default under the terms of a contract is not necessarily a notice of cancellation of it.

11. SAME—NOTICE OF DEFAULT—REMEDIES.

Notice to defendant that default had occurred under a contract in a mentioned particular and that plaintiff would avail himself of all remedies secured thereby in event of such default and to hold defendant liable for all damages *held*, not a notice of cancellation.

12. APPEAL AND ERROR—PERFORMANCE OF CONTRACT—RECORD.

Claim that defendant gas company's failure to fulfill its contract obligation to lay natural gas pipe line to gas well on plaintiff's

leasehold was due to denial of permits to do so by certain townships and therefore excepted by proviso of contract *held*, not supported by record.

13. GAS—MINES AND MINERALS—CONTRACTS—DAMAGES.

Under contract requiring gas company to take all natural gas it required from well on plaintiff's leasehold, and pay for such gas as it used, company which failed to take the gas after drilling productive well *held*, liable to pay plaintiff for resultant damage.

14. SPECIFIC PERFORMANCE—NATURAL GAS—CONTRACTS—DAMAGES— DEPLETION OF FLOW AND RESERVES—RETENTION OF JURISDICTION.

In suit for specific performance of contract whereby gas company agreed to take all natural gas it needed from well or wells to be drilled on plaintiff's land, amount of future damages as affected by depletion of flow and reserves of gas *held*, determinable under jurisdiction retained by the court and in accordance with method provided in contract.

15. SAME—PUBLIC UTILITIES COMMISSION—NATURAL GAS WELL— RATE OF FLOW.

In suit for specific performance of contract to drill wells, lay pipe lines to, and take *all* of defendant gas company's requirements of natural gas from, wells on plaintiff's 80-acre leasehold for period of 10 years, decree ordering defendant to take all its requirements from single well on such land and pay for it or pay plaintiff equivalent of amount of gas used by it for same period is modified to accord with orders of public utilities commission establishing rate of flow of this particular well (2 Comp. Laws 1929, §§ 11632–11651).

16. MINES AND MINERALS—STATUTES—PURPOSE OF REGULATION.

Purpose of statute regulating business of carrying and transporting natural gas through pipe lines is to permit equitable withdrawal of gas by those interested in a common source or field of supply, for purposes of conservation, and to restrict the daily flow or output to that end and all producers in the field are subject thereto (2 Comp. Laws 1929, §§ 11632–11651).

17. DAMAGES—SPECIFIC PERFORMANCE—CONTRACTS—NATURAL GAS— RATE OF FLOW—MITIGATION OF DAMAGES.

Measure of damages for failure of gas company to take all natural gas it required from plaintiff's 80-acre leasehold in accordance with contract of which latter seeks specific performance *held*, amount of defendant company's full requirements up until

establishment by the public utilities commission of rate of flow from the single well drilled and thereafter the amount permitted to be taken from the well as set by the commission from time to time, less amounts plaintiff has received from sale to others in mitigation of damages (2 Comp. Laws 1929, §§ 11632–11651).

18. APPEAL AND ERROR—REMAND—RETENTION OF JURISDICTION—SPECIFIC PERFORMANCE.

In suit for specific performance of, and accounting under, contract of gas company to take its natural gas from plaintiff's 80-acre leasehold for period of 10 years, upon modification of decree as to amount to be accounted for, case is remanded for accounting and retention of jurisdiction to determine defendant's liability in the future and for directions.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 24, 1936. (Docket No. 60, Calendar No. 38,884.) Decided November 9, 1936.

Bill by Hjalmar C. Nelson against Harris E. Galpin, trustee, and Big Rapids Gas Company, a Michigan corporation, for specific performance of a contract, an accounting and an injunction. From decree for plaintiff, defendant Big Rapids Gas Company appeals. Modified and affirmed.

*Alexis J. Rogoski,* for plaintiff.

*Worcester & Worcester, Warner, Norcross & Judd* and *Joseph Shulsky,* for defendant corporation.

TOY, J. Plaintiff, the owner of an oil and gas lease on 80 acres of land located in a natural gas field, in Austin township, Mecosta county, entered into a contract on May 20, 1933, with defendant Harris E. Galpin as trustee, whereby the trustee agreed to drill a well for gas on plaintiff's leasehold, lay a pipe line to such well in the event a producing well resulted, and take therefrom all of the require-

ments of said trustee for the "sale and distribution of natural gas in the territory described as embracing the cities or towns of Big Rapids, Stanwood and Reed City, Michigan, and all outlying and intermediate points or townships for and during the full term and period" of plaintiff's lease, at a stipulated price per thousand cubic feet. The well was drilled in on October 18, 1933, producing a daily open flow of approximately 14,400,000 cubic feet of gas.

On November 8, 1934, plaintiff filed his bill of complaint in this cause, seeking specific performance of the aforementioned contract as against the defendant Big Rapids Gas Company, a corporation, which, it was alleged, was the undisclosed principal of defendant Galpin, as trustee; and seeking an accounting from such defendant gas company of amounts claimed to be due plaintiff because of the gas company's failure to perform the agreement.

Defendant Galpin answered admitting that he acted as trustee for defendant gas company in making the contract with plaintiff. Defendant gas company answered and denied that it was the principal of Galpin as trustee in said contract and claimed other defenses, which will be discussed later herein.

After trial, the circuit judge found for plaintiff; held the defendant gas company to be the real party in interest in the aforementioned contract; decreed that plaintiff was entitled to specific performance thereof by the defendant gas company, but that "inasmuch as it would be impracticable to require the defendant, Big Rapids Gas Company, to construct a pipe line contemplated by said contract, plaintiff is entitled to compensation or damages in lieu of specific performance; and that plaintiff is entitled to receive payment from said last mentioned defendant (gas company) for all natural gas used by it subsequent to the making of said contract to

the date hereof;" and for a period of 10 years from and after the commencement of the use of natural gas by defendant corporation. The decree further provided:

"(1) That the defendant, Big Rapids Gas Company, is liable for the performance of the obligations of the party of the second part in the contract, dated the 20th day of May, 1933, wherein plaintiff is party of the first part, and Harris E. Galpin, trustee, is party of the second part.

"(2) That the defendant, Big Rapids Gas Company, shall forthwith deliver to the plaintiff a verified statement of all natural gas used by it between the 20th day of May, 1933, and the date hereof, and shall immediately make payment therefor to plaintiff at the rate of fifteen cents (15¢) per thousand cubic feet.

"(3) That hereafter defendant shall take from plaintiff's leasehold all gas required by it for a period of 10 years from the date it commenced to use natural gas, and shall pay the plaintiff therefor in the manner, and at the times and at the rates prescribed by paragraph 9 of said contract; or, in the alternative, for the remainder of said 10-year period, defendant Big Rapids Gas Company between the fifth and twenty-fifth days of each month hereafter, shall account to plaintiff for all natural gas used by it during the preceding month, and on the twenty-fifth day of each month shall pay to plaintiff the equivalent of the amount of gas used by it at the rates prescribed by said paragraph 9 of said contract, less the amount received by plaintiff during said preceding month for any gas sold by him from his leasehold not in excess of the amount of his reserve, determined in the manner and stipulated in the provisions of paragraph 5 of said contract; and that it shall be the duty of plaintiff to apprise said Big Rapids Gas Company, in writing, prior to the twenty-fifth day of each month of all

sums received by him for the sale of gas from said leasehold not in excess of said reserve for the preceding month.''

The court in its decree retained jurisdiction of the cause for the purpose of aiding in enforcement of the decree and for purpose of giving further directions to the parties.

From the decree entered the defendant gas company appeals.

On appeal, the appellant urges several reasons which it contends should cause a reversal or a modification of the decree entered below. We shall discuss them in order.

1. It contends that it is not the principal of Galpin, trustee; that plaintiff failed to establish this as a fact by a preponderance of the evidence; that plaintiff has failed to establish such fact as a matter of law.

B. O. Tippy was, at the time of the signing of the involved contract and for many years previously, the president of defendant gas company. He owned 484 of the 500 shares of common stock of the corporation then outstanding, as well as 600 shares of its preferred stock. The gas company had, since its inception, furnished the city of Big Rapids with manufactured gas. Tippy not only was president of the corporation but managed its business as well. While the corporation had other directors, they held shares merely to qualify them as directors. The testimony shows that Tippy conducted the business of the corporation without the restraint or control of his board of directors. He obtained for it a franchise, made contracts for its supplies, applied to the Michigan public utilities commission for a permit to construct for it a pipe line, employed its attorneys— all without any prior reference to the board of di-

rectors and without any advance authority from them so to act. In the instant case Tippy wanted natural gas for distribution to the customers of the corporation in Big Rapids. With these customers becoming, as it were, "natural gas conscious," and with a competitor seeking a franchise to bring natural gas into the city of Big Rapids for distribution, Tippy as president of the Big Rapids Gas Company, was desperately striving to secure natural gas to satisfy the desires of his customers, and to stave off the approachments of intendant competitors. The very business life of his corporation depended upon the obtaining by it of natural gas. Then came the apparent opportunity for Tippy to obtain natural gas from the land under lease by plaintiff.

Without detailing the voluminous testimony relating to the signing of the contract, we deem it sufficient to point out the following:

That Tippy, accompanied by his agents, made the verbal arrangements with plaintiff which afterwards were comprised in the terms of the written agreement. Mr. Welsh, a witness for plaintiff, testified to statements made at that time by Tippy, as follows:

"He stated he anticipated competition with Taggart Brothers. He mentioned the fact that he thought they would get a line into Big Rapids because they would not sell gas to him, and that they were determined to have the Big Rapids Gas Company themselves for a source of income."

He further testified:

"*Q.* Well, what was said about changing the principal of the contract from the name of the Big Rapids Gas Company to Galpin, trustee?

"*A.* He gave his reason for that. The reason he gave myself and Mr. Nelson was that he did not

care to have it known in Big Rapids at this time
that they had completed any deal for natural gas
on account of the controversy that was going on at
that time with the various interests in Big Rapids
and his own company.  He referred to the persons
from whom he desired to conceal the identity of the
Big Rapids Gas Company with the contract.  They
were the Taggart Brothers.

"*Q.*   And did Mr. Nelson consent to that change
under the circumstances?

"*A.*   He did."

Defendant Galpin, an attorney, called by plaintiff
for cross-examination under the statute,* testified:

"*Q.*   *   *   *   That contract was not drawn by
you on your own behalf?

"*A.*   It was not.

"*Q.*   And for whom was it stated and by whom
was it stated that you were acting as trustee?

"*A.*   Mr. Tippy.

"*Q.*   And for whom did he state you were acting
as trustee?

"*A.*   The Big Rapids Gas Company.

"*Q.*   What did he say to you in that regard, Mr.
Galpin, as to your acting as trustee for the Big
Rapids Gas Company?

"*A.*   *   *   *   He asked that I or someone else
whom I could name should act as trustee under this
Nelson contract for the Big Rapids Gas Company so
that the same could be later assigned to parties in
interest.   *   *   *   He stated that until such time
as the gas well was drilled in and until such time as
arrangements could be made to start actual drilling
with Mr. Self who was to drill the well, that he didn't
want the Taggart Brothers to know that he was
going to drill a well or that the Big Rapids Gas
Company was interested in the well."

After the execution of the contract Tippy em-
ployed Galpin to make application to the Michigan

---

* See 3 Comp. Laws 1929, § 14220.—REPORTER.

public utilities commission for a permit to construct a pipe line to the gas well, and requested him to sign such application as attorney for the Big Rapids Gas Company, which was done. This application contained the statement: ''That it (Big Rapids Gas Company) has secured contracts for the drilling of a gas well in Austin township, Mecosta county, and the delivery to it of natural gas produced therefrom.''

Mr. Tippy appeared before the commission on the hearing of the petition.

On September 30, 1933, the defendant gas company ran a paid advertisement in the ''Big Rapids Pioneer'' a newspaper published in the city of Big Rapids, addressed ''To the Citizens of Big Rapids'' and urging them to vote ''No'' at an election on a proposed ordinance to give Taggart Brothers a franchise to sell natural gas in the city. The advertisement contained the following statement:

''The gas company has also shown its good faith on the natural gas proposition by drilling a well in Austin township which is now nearing completion.''

The evidence shows an undoubted acquiescence and ratification by the corporation in its president's acts, and therefore an acceptance of the contract. Even if these instances cited might not be considered sufficient to show the acquiescence of the corporation in Tippy's acts, we think the resolution of its board of directors of June 15, 1933, of itself suffices. It reads:

''Motion was made by John Waddell, seconded by R. C. Stewart, that B. O. Tippy, president, be authorized to secure natural gas for the Big Rapids Gas Company with power to act.—Motion carried.''

Tippy was permitted by the corporation to conduct and manage its affairs. The testimony shows

ratification of his acts in reference to the instant contract. *Ceeder* v. *H. M. Loud & Sons Lumber Co.,* 86 Mich. 541 (24 Am. St. Rep. 134); *Hirschmann & Johnston* v. *Railroad Co.,* 97 Mich. 384.

We hold the Big Rapids Gas Company to be the undisclosed principal of Galpin, the trustee, and that it is bound by the contract as if named the party of the second part therein.

2. Appellant contends that the contract involved is *ultra vires,* and that therefore it is not liable thereunder.

On October 18, 1932, the corporation amended its articles of incorporation with reference to its purposes to read as follows:

"The purpose or purposes of this corporation are as follows, *viz:* The purchasing, building and maintaining of gas works and the appurtenances thereto belonging, the manufacture, generating, distributing and selling of gas for light, heat and power, and the manufacture and sale of the residual products obtained in the manufacture of gas, and to do all such other things as usually pertain to the business of a gas lighting company; also to conduct a retail coal and fuel business and to conduct a general retail mercantile business."

These stated purposes do not restrict the corporation to the manufacture and distribution of artificial gas, as claimed by appellant, but permits it to undertake the "distributing and selling of gas for light, heat and power." The term "gas" as therein used is not restricted to manufactured gas, but covers any gas that may be used for "light, heat and power." This includes natural gas. The contract is not *ultra vires.*

In view of our holding it is unnecessary to pass upon the question of whether or not the plea of *ultra*

*vires* is open to appellant under the language of Act No. 327, § 11, Pub. Acts 1931.

3. An assignment of the contract in question was made by defendant Galpin, as trustee, to the Marshall Gas & Oil Company, a corporation having capital stock in the amount of $1,000. This assignment purports to have been made on September 25, 1933, although it was not recorded until October 26, 1933, eight days after the gas well was drilled.

Appellant contends that this assignment by the trustee was made in pursuance to paragraph 15 of the involved contract and that it relieves appellant of all liability under the contract. The portion of the paragraph 15 of the contract relating to assignment reads as follows:

"Second party shall have the right to transfer and assign this agreement. and the privileges and benefits thereunder to any other persons or to a corporation now or hereafter formed for the purposes of selling, transporting or distributing natural gas in the territory above described and upon said persons or such corporation assuming the liabilities hereof said second party shall be relieved and discharged from any personal liability hereunder."

Did Galpin, the trustee, have authority and power to make the assignment? We think not. We have hereinbefore held that the actual "second" party to the contract was not Galpin, but appellant, the undisclosed principal of Galpin. The assignment was not, then, made by the real party in interest. The record shows it to have been made by Galpin for the protection of his own individual interests and the interests of others not parties hereto. He did not make it as agent for the gas company; in fact, the record shows that his agency had been revoked by his principal, prior to the making of the assignment.

The assignment, so-called, is without force or effect, and does not relieve appellant of its liability under the contract.

4. Appellant contends that the contract involved is void because in violation of the common purchaser and common carrier provisions of Act No. 9, Pub. Acts 1929 (2 Comp. Laws 1929, §§ 11632–11651).

It bases its contention on our decisions in *American Trust Co.* v. *Michigan Trust Co.,* 263 Mich. 337; *Groves* v. *Jones,* 252 Mich. 446; and *Edward* v. *Ioor,* 205 Mich. 617 (15 A. L. R. 256); wherein we held to the principle that a contract made in violation of law is void. Nor do we here depart from that general rule of law, for we hold the contract is not in violation of the above cited statute.

In the first place the statute in question is not prohibitory, but, by the very language of its title and by its terms, is regulatory of the production, purchase and sale of natural gas and of those engaged in the business of carrying and transporting it through pipe lines.

True, section 15 of the act (2 Comp. Laws 1929, § 11646) provides a penalty, for violation of the act, but we are here not concerned with this, for we find no violation of its terms.

The portions of the contract criticized by appellant and which it contends are violative of the statute, are as follows:

"4. Upon the completion of said well or wells as above set forth, first party agrees to sell and second party agrees to purchase from and out of all natural gas produced by first party from said land and leasehold all of the requirements of said second party for the sale and distribution of natural gas in the territory described as embracing the cities or towns of Big Rapids, Stanwood and Reed City, Michigan, and all outlying and intermediate points

or townships for and during the full term and period of said lease of said first party and subject to the following terms and conditions.

"5.    Second party shall only be required to purchase from said first party such of its requirements for said gas as the estimated reserves for said gas, as hereinafter determined, on or under said tract of land shall be sufficient to reasonably provide a source of supply to second party of its requirements for and during the period of 10 years from and after sale of said gas shall be commenced by first party to second party; it being intended that second party shall not be required in the purchase of gas from first party to take or purchase such quantity of gas as would deplete said acreage of its said reserves sooner than 10 years time.    In the event said reserves shall be in excess of said requirements over said period of time, said second party agrees that first party may sell to other parties such gas as shall not be required by said second party hereunder but in no event shall said reserves be depleted faster than said estimated requirements or at a rate sooner than to preserve the same for said period of 10 years.    The amount of said reserves shall be determined from time to time by agreement between the parties hereto and in the event said parties are not able to agree said reserves shall be estimated and determined by a geologist of recognized standing to be appointed by the Michigan public utilities commission of the State of Michigan or its successor then in office upon the application of either party."

Appellant contends that the above quoted portions of the contract in which the parties respectively agree to sell and purchase from and out of all natural gas produced by plaintiff "all of the requirements" of appellant, for the sale and distribution of gas in the described territory, is violative of the "common purchaser" provisions of Act No. 9 and

especially section 4 (2 Comp. Laws 1929, § 11635)
thereof.

We are cited to no authority supporting this contention. Appellant argues, however, that because
the statute limits the amount of gas which may be
taken from any given well, and because it requires
those transporting gas to be a common purchaser of
it, in the vicinity of its pipe lines, and because the
contract does not so provide, but on the contrary
requires the gas company to take *all* its needs from
the well or wells of plaintiff, it violates the statute.

It must be remembered that appellant was in dire
need of securing natural gas for its customers in Big
Rapids; that it apparently faced business extinction
if it did not secure it; that a competitor, Taggart
Brothers, was attempting to supplant it in its territory, and had for that purpose piped natural gas
to the very gates of the city; that Taggart Brothers,
a common purchaser of gas, had refused to sell it
gas of theirs; that no other gas was then available
for it; that when the opportunity was presented by
plaintiff whereby such supply of gas could be obtained, it was avidly seized upon by appellant as the
panacea of its business difficulties. Appellant
wanted natural gas and must have enough to supply
its demands. Nowhere else was gas found available. It agreed to take it from plaintiff and in
amounts sufficient to meet its requirements. It·
agreed to lay a pipe line to the well to get it. It is
charged with knowledge of the existing regulatory
statute, and presumably made its contract in the
face of it. It did not want plaintiff to sell gas to
others until its full requirements were met, for the
contract provided that sale of gas should be made
to others only after appellant's requirements had
been met.

At the time of the making of the contract, the volume of the flow of natural gas to be produced from plaintiff's leasehold was unknown. By the very terms of the contract more than one well was contemplated as essential to produce the gas necessary for appellant's requirements. While the terms of the statute (2 Comp. Laws 1929, § 11638) provide for the maximum flow permitted, yet because the well when drilled was insufficient, if restricted to this amount, to meet appellant's requirements, does not invalidate the contract.

Furthermore, the act (2 Comp. Laws 1929, § 11638) makes provision for the establishment of a higher rate of flow by the Michigan public utilities commission under the "exigencies" of a particular case.

Under the "exigencies" of this particular case, as appears from the record before us, with the appellant in dire need of natural gas, with a competitor attempting to take over its customers and with the refusal of Taggart Brothers to sell it gas, good cause has been shown why an additional flow sufficient to meet appellant's requirements should have been allowed. This is proved, when we find from the record, that finally, after Taggart Brothers had secured the control of appellant by the purchase of its stock owned by Mr. Tippy, appellant secured its requirements of natural gas from Taggart Brothers, who have, since then, been permitted to supply all of appellant's requirements. We think appellant may not now be heard to say that plaintiff could not legally do that which has since been done by appellant itself. We do not find the contract subversive of the statute.

5. The contract in question contained the following provisions:

"In the event said second party shall not fully perform all of the terms and conditions of this

agreement, then and in that case first party shall have the right to notify second party of its default by written notice thereof and to require second party to remedy the same within 30 days thereafter and if said default be not so remedied, first party shall have the right to terminate and cancel this agreement.''

On November 9, 1933, plaintiff sent a notice to defendant and others, in part as follows:

''TAKE NOTICE FURTHER that default has been made by the party of the second part under said agreement, in that said party of the second part did not forthwith after the completion of said well commence the laying and construction of gathering and transmission pipe lines for the purpose of transporting gas from said well to and through the territory in said agreement mentioned.

''TAKE NOTICE FURTHER that by reason of the default aforesaid, the undersigned, H. C. Nelson, hereby elects to avail himself of all remedies secured to him by said contract in event of said default, and to hold each and every one of you liable for all damages sustained by him as result thereof.''

Appellant contends that this notice cancelled the contract and therefore prevents any recovery thereon by plaintiff.

We find nothing in such notice which cancels the contract. The notice merely recites the fact of defendant's default and the intention of plaintiff to avail himself of his remedies. A notice of default is not necessarily a notice of cancellation. It certainly cannot be so construed in the instant case.

6. Section 7 of the contract provides:

''7. Said second party further agrees that upon the completion of said well or wells in commercial producing quantities, he will forthwith commence the laying and construction of gathering and transmitting pipe lines for the purpose of transporting

said gas from said well or wells to and through the territory above described and will complete said construction of said lines not later than 60 days after said first producing well has been completed; provided, that said second party shall not be liable if delayed in said commencement of construction on account of failure to secure necessary approval or permits from the Michigan public utilities commission or any other State or municipal regulatory authority.''

Appellant made applications for permits to lay natural gas lines through the townships of Colfax and Big Rapids. These, we infer from the record, were denied by the respective townships. For what reason, we are not advised. Counsel for appellant contends that because of such denial appellant was prevented, by the *proviso* clause of section 7 of the contract quoted above, from performing its contract, and that such a prevention constitutes a defense to plaintiff's claim.

In view of the barrenness of the record regarding this matter we are loathe to make decision. Nowhere in the record do we find any testimony from which it could be inferred that the failure of appellant to perform his contract was caused by its failure to obtain permits from the stated townships to lay its lines through their borders.

The record does not substantiate appellant's claim.

The remainder of appellant's contentions, worthy of consideration, refer to the decree of the court below and especially to those portions of it contained in paragraph 3 of such decree hereinbefore quoted. It contends against those provisions requiring appellant to pay for the natural gas used by it, when such gas is not taken from the well of plaintiff. This is answered by the contract itself. Appellant agreed to take such gas and pay for it. It has

failed to do so, therefore it must pay plaintiff for his resultant damage.

Appellant contends that the decree of the court below does not give effect to paragraph 5 of the contract (hereinbefore quoted). We permitted additional testimony to be taken relative to this matter having to do with the depletion of reserves of gas in the Austin field. The experts called by the parties were unable to agree as to the amount of depletion or as to the constancy of the flow. One thing does appear from such testimony and that is, that there is a probability of a depletion of the flow of the gas well from time to time as well as a probability of a depletion of reserves which may ultimately cause a lessening or stoppage of the flow. Many and varied reasons and theories are assigned *pro* and *con* regarding this situation but with which we are not presently concerned.

We think that such conditions can be met as they occur by the provision in the decree in which jurisdiction is retained by the court.

Paragraph 5 of the contract provides that the amount of reserves shall be determined by agreement between the parties, and in the event of inability to agree, for the appointment of a geologist to make such determination. The parties are bound by the terms of their contract, and we will not here interfere and interpose our determination of' the amount of reserves for the method called for by the contract.

On one point, however, we are not in concord with the decree of the court below. We refer to paragraph 3 thereof hereinbefore quoted. There, it will be noted, the decree requires appellant to take *all* of its requirements for a period of 10 years from the date it commenced using natural gas; or, in the

alternative, to pay to plaintiff the equivalent of the amount of gas used by it for the same period.

This, we think, should be modified to accord with the orders of the Michigan public utilities commission, based on the statute (2 Comp. Laws 1929, §§ 11632–11651), establishing the rate of flow of this particular well.

One purpose of this statute is to permit equitable withdrawal of gas by those interested in a common source or field of supply, for purposes of conservation, and to restrict the daily flow or output to that end. Plaintiff, as well as other producers in the field, is subject thereto. Appellant will therefore be required to pay plaintiff for all of its requirements up to the amount of gas permitted to be taken from plaintiff's well as such is established from time to time by the commission. For the period that appellant has used natural gas prior to the establishment of the rate of flow allowed by the commission, it shall pay plaintiff for its full requirements. Our reasoning which forms the basis for this decretal provision is contained in subdivision 4 of this opinion.

Plaintiff has sold of its gas to others for the purpose of mitigation of damages. The net amounts received by him therefor shall be credited as against the amounts found due plaintiff from appellant.

With the noted modifications, the decree below will be affirmed. The cause is remanded to the trial court for the purposes of the required accounting, and the trial court shall thereafter retain jurisdiction of the cause for the purposes herein mentioned and for the other purposes stated in paragraph 7 of the decree entered below. Plaintiff will recover costs.

North, C. J., and Fead, Wiest, Butzel, Bushnell and Sharpe, JJ., concurred. Potter, J., took no part in this decision.