W. O. BARNES COMPANY, INC., *v.* FOLSINSKI.

1. CONTRACTS—CONSTRUCTION—INTENT.

  The purpose sought to be accomplished by the parties to a contract, as indicated by the language used and read in the light of the attendant facts and circumstances, must be considered in construing a contract, such intent being given effect, if possible, when ascertained and prevailing as against the literal meaning of expressions used in the agreement.

2. CORPORATIONS—CONTRACT TO SELL STOCK TO OFFICER—CONSTRUCTION.

  Agreement between corporation and its secretary and executive vice-president who was also a director whereby former agreed to sell to latter stock which latter was to resell to former in event latter ceased to be an employee and which agreement provided that latter should not have possession or right to sell, assign or transfer the stock or encumber same in any way indicated a purpose and plan on part of corporation to restrict stock ownership to those directly concerned in carrying on the business.

3. SAME—CONTRACT TO SELL STOCK TO OFFICER—STOCK DIVIDEND.

  Ownership of stock, which had been declared a dividend on stock an officer and director had purchased from corporation under agreement restricting stock ownership to those directly concerned in carrying on the business and which prohibited him from possessing, selling, assigning or transferring such stock, *held*, not absolute but limited and qualified by the provisions of the purchase contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 227.
[2, 3, 5, 8, 10] 13 Am Jur, Corporations §§ 337, 338, 674.
[4] 13 Am Jur, Corporations § 657.
[6] 13 Am Jur, Corporations § 319.
[7] 13 Am Jur, Corporations § 670.
[9] 12 Am Jur, Contracts § 249.

4. SAME—SURPLUS.

The surplus of a corporation is the property of the corporation the same as other corporate assets and may be employed as capital, the stockholder not being entitled thereto except that he may have an equitable right to insist that a part of it be divided among the several stockholders.

5. SAME—STOCK DIVIDEND.

A corporation capitalizes a part of its surplus by transferring it to fixed capital when it declares a stock dividend and it does not work a severance of earnings from other corporate assets.

6. SAME—CERTIFICATE OF STOCK.

A certificate of stock is only evidence of ownership of an aliquot part of the assets of a corporation, less its liabilities.

7. SAME—EARNINGS—DIVIDENDS.

Earnings of a corporation are corporate property until separated from the capital and segregated for dividend purposes and declared as dividends.

8. SAME—SPECIFIC PERFORMANCE OF AGREEMENT TO REPURCHASE STOCK OF DIRECTOR AND OFFICER.

Specific performance of agreement by director and officer for repurchase of his stock by corporation may not be denied by administrator of his estate because stock dividend was declared instead of a cash dividend, where such action had been participated in and approved by the defendant's deceased.

9. CONTRACTS—CONSTRUCTION—PRACTICAL INTERPRETATION BY PARTIES.

A practical interpretation of a contract, as evidenced by the conduct of the parties thereto, is entitled to consideration by a court called upon to construe the contract.

10. CORPORATIONS—CONTRACT TO PURCHASE STOCK—SPECIFIC PERFORMANCE—CONSTRUCTION BY PARTIES.

Corporation which had sold 100 shares of its stock to one of its directors and officers under an agreement which included restrictions prohibiting the purchaser from possessing, selling, assigning or transferring it and for repurchase by the corporation and which provided for crediting dividends upon the purchase price thereof included the corporation's right to specific performance thereof as to 300 shares of stock in stock dividend subsequently declared, where subsequent to declaration of stock dividend, corporation applied cash dividends on 300 shares toward payment of purchase price of

original 100 shares without any question having been raised as to propriety of such action.

Appeal from Wayne; Webster (Clyde I.), J. Submitted June 9, 1953. (Docket No. 45, Calendar No. 45,863.) Decided October 5, 1953.

Bill by W. O. Barnes Company, Inc., a Michigan corporation, against Frank Folsinski, administrator of the estate of Louis R. Hauser, deceased, for specific performance of an agreement relating to stock in plaintiff corporation. Decree for defendant. Plaintiff appeals. Reversed and decree for plaintiff ordered.

*Dickinson, Wright, Davis, McKean & Cudlip (R. William Rogers* and *Edgar C. Howbert,* of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone,* for defendant.

CARR, J. This is a suit for the specific performance of an agreement pertaining to stock in the plaintiff corporation. In 1945 and for some time prior thereto plaintiff was engaged in business in the city of Detroit, its earnings being substantial in amount. All stock then issued and outstanding, prior to performance under the agreement in question here, stood in the name of the president, J. H. Flavell. Among other officers and employees was defendant's decedent, Louis R. Hauser, who had acted as director, secretary, and executive vice-president. From 1946 until his death on or about November 18, 1949, he served as treasurer and was also a member of the board.

Plaintiff alleges in its bill of complaint that because of the nature of the duties performed by Hauser and the responsibility resting on him, and

also because of the increase in living costs, the company desired to raise his compensation above the basic salary of $600 per month that he was receiving. It was anticipated that a direct salary increase would not be approved by the salary stabilization unit of the United States treasury department. A plan was, therefore, devised which would allow Hauser to share in the plaintiff's profits but would withhold from him immediate benefits. It is claimed that the agreement in question, executed on the 21st day of December, 1945, but declared effective as of the 12th of July preceding, was entered into by the parties to accomplish the purpose indicated.

By the terms of the agreement the plaintiff promised to sell to Hauser 100 shares of its capital stock for which he was to pay, on or before 5 years from date, the sum of $15,000. It was further stipulated that the certificate issued in Hauser's name should be indorsed in blank by him, that it should remain in plaintiff's possession, and that the plaintiff should have a lien thereon for all amounts due from the employee. Right to foreclose the lien in event of default was given. On the death of Hauser, or in the event that for any other reason he ceased to be an employee of the plaintiff, it was agreed that the corporation should repurchase, and Hauser should sell to it, the shares of stock for the said sum of $15,000, less any amount that might be owing at the time by Hauser to the company. In the event of the death of Flavell prior to completion of payments under the contract, the balance remaining was to be cancelled, such unpaid balance to be treated on the books of the company as additional compensation paid to Hauser. It was specifically provided that other terms and conditions of the contract should not be affected by such contingency.

Under the agreement Hauser was granted the right to vote the stock issued in his name so long

as he was not in default in his obligation. Until completion of payments all dividends declared on the stock were to be credited against the purchase price until fully paid, and such dividends payable thereafter were to be received by Hauser. It should be noted also, that while the agreement made reference to payment for the stock within a period of 5 years, no specific requirement as to payments by Hauser other than by such credits was included, an omission of some significance with reference to the matter of intent. Apparently the parties had in mind that the crediting of dividends declared on the stock might not equal the sum of $15,000 during the ensuing 5 years, it being provided that interest at the rate of 5% per annum should be charged on any balance remaining unpaid from and after the termination of such period.

The following provisions are especially significant:

"7. The employee shall not be entitled to possession of the aforesaid certificate nor to sell, assign, transfer nor encumber the same or the shares represented thereby in any way, nor shall said shares be liable for the debts of the employee other than his obligations to the company nor shall the same be subject to seizure by any creditor of the employee under any writ or proceeding whatsoever.

"8. It is the declared intention of the parties that until the company repurchases the shares (which the employee agrees to resell to the company) all as above set forth, said shares shall represent a personal, nontransferable interest of the employee so long and only so long as he shall remain in the company's employ, said shares having been sold to him hereunder solely as an inducement to remain in the employ of the company and to exert his best efforts in behalf of the company's interest."

In accordance with the arrangement made by the parties, a certificate for 100 shares of stock was issued in the name of Hauser. The certificate was indorsed by him and remained in the possession of the plaintiff. Dividends were declared from time to time and the amounts apportionable to Hauser's shares were duly credited on the account. In 1948, by action of the board of directors, the president was authorized to modify the agreement in such manner as to permit Hauser to receive one-fourth of the dividends declared and payable on his stock, the remaining three-fourths being credited on his obligation. Like authority was given with reference to agreements made with 2 other employees of the company to whom stock had been issued, evidenced by certificates for 50 and 75 shares respectively, under agreements of the same character as that made between plaintiff and Hauser. The record indicates that the authority to the president was exercised at least insofar as Hauser was concerned.

At a stockholders' meeting held on May 24, 1948, a motion was adopted to increase the authorized capital stock of the corporation from $90,900, represented by 909 shares of the par value of $100 each, to $500,000 with 5,000 shares of the par value indicated. It was specifically declared in such motion that the shareholders should have no pre-emptive right to subscribe for additional shares. Further action was taken at the meeting to authorize the transfer of $287,700 from the surplus earnings account to the capital account, with a recommendation to the board of directors that a stock dividend be declared. The recommendation was acted on by the board of directors, of which Hauser was a member, and a stock dividend of 3 shares for each share owned by stockholders of record was declared. In accordance with such action a certificate for 300 shares, referred to in the record as certificate #31,

was issued in the name of Hauser. Such certificate was placed in the safe in the plaintiff's office but was subsequently removed and at Hauser's death was found among his possessions.

Following the declaration of the stock dividend a cash dividend at the rate of $15 per share was declared 'and paid. Of the total of $6,000 payable on the shares of stock issued in Hauser's name the sum of $4,500 was credited on his obligation to the plaintiff, the balance being received by him. A further dividend at the rate of $2.50 per share was paid in December, 1949, after Hauser's death, and the full amount thereof was credited on his obligation.

The total amount of the credits allowed Hauser on his account was the sum of $12,500. Claiming that it was entitled, on the payment of said amount, not only to the original certificate for 100 shares issued to Hauser, but also to the 300 shares evidenced by certificate #31 issued in Hauser's name as a stock dividend, plaintiff made demand on defendant as administrator of Hauser's estate for the delivery of said certificate #31, conceding its liability for the aggregate of the credits. The demand was refused, it being defendant's position that the stock issued in Hauser's name as a dividend became his sole property, and that it was not subject in any way to the terms of the agreement. Thereupon the present suit was instituted. Following a hearing the trial court came to the conclusion that plaintiff was not entitled to the relief sought, and a decree was entered dismissing the bill of complaint. Plaintiff has appealed, asserting that such decree is not in accordance with its just rights.

The primary question involved is one of interpretation of the contract. In construing its provisions due regard must be had to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant

facts and circumstances. Such intent when ascertained must, if possible, be given effect and must prevail as against the literal meaning of expressions used in the agreement. *Montgomery* v. *Central National Bank & Trust Company of Battle Creek,* 267 Mich 142; *Nelson* v. *Big Rapids Gas Company,* 299 Mich 284; *Moulton* v. *Lobdell-Emery Manufacturing Company,* 322 Mich 307; *Loyal Order of Moose, Adrian Lodge 1034,* v. *Faulhaber,* 327 Mich 244.

The provisions of the agreement of December 21, 1945, establish beyond question that the parties did not intend that ownership of the shares of stock evidenced by the certificate issued to Hauser should be acquired by any other person or persons. The provisions against assignment or encumbering, and for the return of the stock to the corporation on the death of Hauser or his ceasing to be an employee of plaintiff for any other reason, indicate a purpose and plan on the part of the plaintiff to restrict stock ownership to those directly concerned in the carrying on of the business. As an officer and director of the corporation Hauser fully understood such purpose and approved it.

Plaintiff emphasizes its claim that the sole purpose of the arrangement between it and Hauser was to enable the latter to receive an increase in compensation for his services by sharing in the corporate profits. In substance it is argued that the agreement into which the parties entered did not contemplate the acquiring of full and complete rights of ownership in any part or portion of the assets of the corporation. Defendant stresses the fact that no mention was made in the agreement with reference to the status of possible stock dividends, and that when such dividend was declared no reference was made by the board of directors to the stock to be issued to Hauser. It is quite probable that neither the plaintiff nor Hauser foresaw the possibility of any

controversy arising in the future with reference to such matter.

The certificate issued in Hauser's name ostensibly represented a certain interest in the assets and business of the corporation. When the number of shares of stock outstanding was increased as a result of the stock dividend, there were 400 shares standing in his name, but the interest in the corporation evidenced thereby was the same as had previously been evidenced by the certificate for 100 shares. The value of each share was proportionately reduced. As before suggested, the obvious purpose of the agreement was to give him such an interest in the corporation as would permit him to benefit from the profits received. If defendant's position is correct the net result is that Hauser obtained from the declaration of the stock dividend, as his sole and absolute property, three-fourths of the interest in the corporation, its business and assets, represented by the original certificate at the time of the agreement in 1945. Such result is, we think, at variance with the purpose and intent of the agreement. Hauser had merely the right by virtue of the agreement to have credited on his obligation to the company dividends paid by it on the shares of stock evidencing the interest that had been transferred to him for income purposes only. His ownership of the stock issued in his name was not absolute but was limited and qualified by the provisions of the contract between the parties.

The inherent nature of a stock dividend was considered by this Court in the case of *In re Joy's Estate,* 247 Mich 418 (72 ALR 973). The question there at issue was whether such dividends belonged to the life beneficiary under a trust or to the residuary legatee. The decree of the trial court favored the beneficiary. In reversing, this Court discussed the so-called Kentucky, Pennsylvania and Massachusetts

rules on the subject, reaching the conclusion that the dividends in question were not income but belonged to the corpus of the estate, and that, as such, they should be awarded to the residuary legatee in accordance with the rule last named. For the purpose of emphasizing the distinctions in the application of the said rules the Court quoted at some length from decisions in other States; and, in reaching the conclusion that the Massachusetts rule should be followed, said in part:

"In common practice, a corporation engaged in business distributes its net earnings to its stockholders at regular intervals in what are called ordinary cash dividends, retaining a part thereof, either for the purpose of security against possible future losses and business depression or for additional working capital, in a fund which is usually referred to as surplus. These cash dividends are, of course, properly treated as income. Until so distributed, the surplus is the property of the corporation the same as other corporate assets, and may be employed as capital. The stockholder is not entitled to any portion of it except that he may have an equitable right to insist that a part of it be divided among the several stockholders. *Dodge* v. *Ford Motor Co.*, 204 Mich 459 (3 ALR 413). Occasionally, an extraordinary dividend, either in cash or stock, is declared. By the former, a part of the surplus, in addition to the regular cash dividend, is distributed. By the latter, the corporation capitalizes a part of its surplus by transferring it to fixed capital, and to the extent thereof it issues additional capital stock *pro rata* among its stockholders by a stock dividend. * * *

"A stock dividend does not work a severance of earnings from other corporate assets. What belonged to the corporation still remains such. When the surplus was capitalized, its earning power was in no way lessened. The beneficiary would thereafter be entitled to receive the income derived by

the trustees from this additional stock held by them. Should the whole or any part of the stock dividend have been alloted to her, she would then have had an integral interest in the assets of the corporation, which she might have disposed of at will. If the purpose of the trust was to protect against a spendthrift child, as it might well have been by the language used, the force of this reasoning would be apparent.

"Another result of the application of this rule may be noted: Suppose the trust provides for the payment of the income to A for life and thereafter to B for life, and let us assume that the estate consists of 100 shares of stock in a corporation. If, during the lifetime of A, a stock dividend of 100% be declared which does not impair the actual value of the stock, A would be entitled to it, and would thereafter receive the cash dividends from the 200 shares, while B, his successor in the trust, after A's death, would receive such dividends on but 100 shares and A's estate on the other 100. Can it be assumed that the creator of such a trust would not be equally desirous of securing an income from the entire stock interest to B as to A?"

The *Joy Case* was cited and followed in *Polish American Publishing Company of Detroit* v. *Wojcik*, 280 Mich 466, 473, where it was said:

"Certificates of stock are only evidences of ownership of an aliquot part of the assets of the corporation. The earnings of the corporation belong to it. They, too, are a part of the trust fund in the hands of the corporation. They are additions to the capital thereof. Any stockholder's interest in such earnings or additions to the capital of the corporation is represented by the certificate of stock which is evidence the legal holder thereof is entitled to an aliquot part of its assets, less its liabilities. And such interest passes, on the passing of the certificate of stock, to the holder thereof. Until the earnings of the corporation are separated from its capital and

segregated for dividend purposes and declared as dividends, they do not belong to the stockholders as separate and distinct from the corporation itself. The surplus earnings of a corporation are corporate property."

Defendant emphasizes the fact that the transfer to the capital account at the time of the stock dividend was from the earned surplus of the corporation. As pointed out in the cases above cited, however, the earned surplus was a part of the assets. Whether stockholders might have insisted on a cash dividend being · declared under the general principles recognized in *Dodge* v. *Ford Motor Co.*, 204 Mich 459 (3 ALR 413), is not before us for determination. No such action was attempted. On the contrary, the transfer to the capital account and the declaration of the stock dividend were unanimously approved. Hauser, as a stockholder and as a member of the board of directors, participated in the action taken. Plaintiff's claim to relief in the instant proceeding may not be defeated on the theory that it should have distributed its earnings, or a portion thereof, in cash dividends which would have constituted income instead of retaining the money and issuing stock. Such retention did not increase its net assets.

As before noted, when the cash dividend at the rate of $15 per share was declared in 1948, the amount thereof on the shares evidenced by the certificates issued to Hauser was $6,000. Of that amount $4,500 was credited on Hauser's obligation to the corporation, he being permitted to receive the sum of $1,500 in accordance with the action of the board of directors on May 24, 1948. Obviously if the stock dividend belonged to him absolutely and was not subject in any way to the provisions of the agreement between the parties, he was actually entitled to receive the full amount of the dividend on

300 shares together with one-fourth of the payment on the original certificate. The record does not indicate that he took any such position at· the time. On the contrary, he acquiesced in what was done. The further dividend in the sum of $2.50 per share, actually paid in December, 1949, after Hauser's death, was credited in full on his obligation, and it does not appear that any question was raised as to the propriety of that action.

· The apparent accord between the parties, particularly with reference to the $15 per share dividend, may be regarded as indicating their interpretation of the agreement with reference to the status of the stock dividend. In an instance where parties to a contract have by their conduct given a practical interpretation to its provisions, such interpretation is entitled to consideration by the court. *City of Big Rapids* v. *Michigan Consolidated Gas Company,* 324 Mich 358, 367 (79 PUR NS 301); *City of Mt. Pleasant* v. *Michigan Consolidated Gas Company,* 325 Mich 501, 511 (81 PUR NS 589).

. The agreement in question here, construed in the light of the relations of the parties, the purpose to be accomplished, the manifest intent of the provisions incorporated in it, and the acts of the parties thereunder, leads to the conclusion that plaintiff is correct in its position and that it is entitled to the relief sought. A decree will enter accordingly in this Court, reversing and setting aside the decree of the trial court. Plaintiff may have costs.

DETHMERS, C. J., and ADAMS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.