TEACHOUT *v.* MAIERS.

1. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT.

The Court of Appeals will not set aside the findings of fact in a nonjury suit whereby plaintiffs sought specific performance of alleged agreement to procure a written lease from landlord of premises upon which restaurant business was conducted or, in the alternative, rescission of the agreement of sale of the business and return of all moneys paid by them to defendant, unless the findings are clearly erroneous (GCR 1963, 517.1).

2. CONTRACTS—CONSTRUCTION—INTENT.

The cardinal rule in the interpretation of contracts is · to ascertain the intention of the parties, all other rules being subordinate thereto.

3. SAME—AMBIGUITY—PAROL EVIDENCE.

Parol evidence may be admitted to show preliminary negotiations, not to vary or contradict the plain terms of an ambiguous instrument, but to aid the court in determining the intent with which the words were used.

4. SAME—ASSIGNMENT OF LEASE—PAROL EVIDENCE.

Parol evidence was properly admitted in suit seeking the alternative relief of specific performance of an agreement to assign lease of premises on which restaurant business was being conducted or rescission and return of sums paid, in order to show true intent of the sales agreement was that the lease involved was an oral lease.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 839–845.
[2] 17 Am Jur 2d, Contracts §§ 1, 22, 240, 245.
[3, 4] 20 Am Jur, Evidence § 1142 *et seq.*

Appeal from Eaton; McDonald (Archie D.), J. Submitted Division 3 October 7, 1965, at Lansing. (Docket No. 665.)   Decided December 20, 1965.

Complaint by Lyle W. Teachout and Irma Teachout against Robert H. Maiers, Sr., for specific performance of contract to assign written lease for restaurant, or in alternative, for rescission of sale and refund of money paid. Judgment for defendant. Plaintiffs appeal. Affirmed.

*John H. Eliasohn*, for plaintiffs.

*Hudson E. Deming*, for defendant.

McGregor, J. The plaintiffs, Mr. and Mrs. Teachout, contracted to buy defendant Maiers' restaurant business, located in the basement of the Elks building in the city of Lansing, together with fixtures, merchandise and equipment. The purchase price was $32,500, with $14,366.31 as down payment, and the balance to be paid at $200 or more each month, with interest at 6% per annum. The agreement allocated the entire purchase price to trade fixtures and provided that title to all these fixtures would remain in the defendant seller until the entire price had been paid. The contract provisions here brought to issue are as follows:

"6. If there is default in payments or if there is a violation of any of the terms of this contract, seller may either (1) elect to sue for the entire amount unpaid thereby vesting title in buyers, or (2) take possession of said fixtures with or without legal process and thereafter hold them free from all claims and retain all payments made to date thereof."

"11. Seller agrees to assign his lease with the Elks to buyers who agree to assume the same and save the seller harmless therefrom. In the event seller is unable to secure an assignment of said lease to buyers, then this agreement shall be null and void and all moneys paid hereon shall be returned to buyers."

"18. This contract contains the entire agreement of the parties and there are no understandings, representations, or warranties, express or implied, by operation of law or otherwise, other than those made herein."

After the plaintiffs operated the restaurant business for more than three years they were evicted from the building by the Elks, who then had defendant resume operation of the restaurant. The plaintiffs had faithfully met all the required payments until their eviction. Plaintiffs filed a complaint in circuit court, demanding specific performance requiring defendant Maiers to procure a written lease from the Elks and to assign the same to the plaintiffs, or in the alternative, rescission of the contract and return of all the moneys paid by them to the defendant. The defendant contended that he fully performed the requirements of paragraph 11, *supra,* by oral assignment of his oral lease with the Elks. Defendant also counter-claimed for reformation of the contract to exclude paragraph 11 on the grounds that said paragraph was retained in the written agreement by mistake. He did not ask, however, for judgment awarding the contract balance.

The trial court, sitting without a jury, rendered judgment denying the plaintiffs any relief and barring defendant from recovering any of the purchase price. Plaintiffs bring this appeal on the grounds that the trial court erred in admitting parol evidence which tended to show that the plaintiffs were in-

formed of the lack of any written lease between the defendant Maiers and the Elks.

The trial court did not grant reformation of the contract, but found instead that paragraph 11 made no reference to, and did not require, a written lease to be obtained by the defendant and assigned to the plaintiffs. The trial court admitted testimony that the attorney who represented the plaintiffs at the contract closing informed them that defendant was operating his business on a month-to-month oral lease. The court also allowed defendant to introduce into evidence a memorandum, dated slightly prior to the signing of the sales contract, which was given by Mr. Walter Grabow, secretary-manager of the Elks, to plaintiff Mrs. Irma Teachout. This memorandum provided in part as follows:

"The following agreement between Lansing Lodge #196 and Mrs. Irma Teachout relative to operation of cafeteria in building is effective April 1, 1960.

"1. The entire basement, including stairway from Elks Lodge to cafeteria and Allegan entrance.

"2. The rent shall be $250 per month for the first six months, payable on the 1st day of the month. At the end of the six months period, the board of trustees and Mrs. Teachout will meet to evaluate and determine a rental figure."

Plaintiffs contend that, although paragraph 11 does not specifically refer to a written lease nor specify any term, the lease was to have been in writing and for a term sufficient to enable plaintiffs to complete their payments under the contract. At the rate of $200 per month, it would have taken about 10 years to pay the entire contract price. The trial court found, however, that the plaintiffs were aware of the lack of a written lease, and that they entered into the contract with full knowledge that their continuance in the building depended upon a

review by the Elks of the restaurant operation at the end of the first six months of the plaintiffs' operation of the business. The trial court concluded that defendant had not breached the contract by failing to obtain a written lease.

This Court will not set aside the findings of fact made by the trial court unless they are clearly erroneous. GCR 1963, 517.1.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of parties. To this rule all others are subordinate.   *   *   *  .

"If ambiguous terms are used, the preliminary negotiations may be considered, not to vary or contradict the plain terms of the instrument, but to aid the court in determining the intent with which such words were used." (Authorities cited.) *McIntosh* v. *Groomes* (1924), 227 Mich 215, 218, 219.

The trial court did not err in accepting evidence to show the true intent and meaning of paragraph 11 of the sales agreement.

The decision of the trial court is affirmed. Costs are awarded to defendant-appellee.

QUINN, P. J., and WATTS, J., concurred.