**THREE D DEPARTMENTS, INC., Plaintiff,**

v.

**K MART CORPORATION, Defendant.**

No. 86C9948.

United States District Court, N.D. Illinois, E.D.

Oct. 9, 1987.

Michael L. Corrado, Ray H. Greenblatt, George V. Bobrinskoy, Jr., Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Alan L. Unikel, Marvin A. Tenenbaum, Ralph J. Schumann, Sara A. Mathias, Alexander, Unikel, Zalewa & Tenenbaum, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This action arises out of a license agreement between plaintiff Three D Depart-

ments, Inc. ("Three D") and defendant K Mart Corporation ("K Mart") for the operation of "bed-and-bath" departments in K Mart's Designer Depot stores. Three D alleges that K Mart breached express and implied terms of the contract, and committed fraud, by inducing Three D to expand its operations and then terminating the agreement.

K Mart has moved to dismiss the complaint pursuant to Rules 9(b), 10(b) and 12(b)(6) of the Federal Rules of Civil Procedure. This court has jurisdiction under 28 U.S.C. § 1332. For the reasons set forth below, K Mart's motion is granted.

## FACTS

In ruling on a motion to dismiss, a district court must accept as true all well-pleaded allegations set forth in the complaint. *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 106 S.Ct. 2034, 2037, 90 L.Ed.2d 480 (1986); *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987). In addition, the court may consider certain extraneous materials, such as the terms of a written agreement and other exhibits attached to the complaint, Fed.R.Civ.P. 10(c), as well as the memoranda in support of and in opposition to the motion. *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F.Supp. 1366, 1367 (D.C. Ill.1985). *See* 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1357 at 593 (1969). The court may not, however, rely upon affidavits or other materials addressed to the truth or falsity of plaintiff's factual assertions. 5 Wright & Miller § 1357 at 593. Accordingly, for the purposes of this motion, the court will consider the contract and related exhibits submitted with the complaint, but will exclude from consideration the affidavit of Donald L. Abrams, which Three D submitted with its memorandum in opposition to K Mart's motion to dismiss.

In February, 1984, Three D and K Mart entered into a contract for Three D to establish and operate retail sales departments for bed and bath supplies and related merchandise in K Mart's Designer Depot stores. The contract provided for the immediate establishment of departments in 7 stores. It also set forth the terms and conditions that would govern licenses for departments in other stores should the parties agree to such additional licenses in the future.

At the time the parties entered into the agreement, they recognized that Three D would require an average of 48 months to recover its start-up costs. Paragraphs 1(a) and (b), when read together, reflect this understanding by providing that the contract would run for 48 months from the opening of any store, but that K Mart could terminate individual licenses upon 30 days notice. Paragraph 1(a) of the contract states, in pertinent part, that:

The individual term of the license for each store included in this Agreement shall commence as of the date of the first opening of the department at such store by [Three D] and shall terminate on the last day of the forty-eighth month subsequent to the opening unless terminated earlier in accordance with (b) through (f) below.

Paragraph 1(b), in turn, states that:

In the event K Mart shall elect to close any of the store(s) covered by this license, it may do so upon at least thirty (30) days prior notice to [Three D] and the individual license for such store shall terminate on the date of such closing.

From February, 1984 through November, 1986, K Mart repeatedly urged Three D to expand its operations in existing stores and to open new departments in other stores. As a result of this encouragement, Three D did substantially increase the size and number of its bed-and-bath departments. As of early November, 1986, Three D was operating 30 bed-and-bath departments in Designer Depot stores in eight states. The value of Three D's inventories in these stores exceeded $5,000,000.

At the same time that K Mart was encouraging Three D to expand its operations, it was, unbeknownst to Three D, considering terminating the Designer Depot chain. On November 7, 1986, K Mart informed Three D that it would be closing

all Designer Depot stores in January, 1987, and that it would conduct "going out of business" sales beginning in late November and running through the Christmas holiday. When the stores did close in January, 1987, none of Three D's departments had been operating for four years, and the majority had been in operation for less than two years.

## DISCUSSION

Three D divides its complaint into two counts. In Count I, it alleges that K Mart breached express and implied terms of the contract. In Count II, it claims that K Mart committed fraud in the execution and performance of the contract.

*Count I*

Count I can be divided into three separate claims. First, that K Mart violated an express term of the contract—the four-year provision of paragraph 1(a)—by terminating the contract *in toto* less than three years after its execution; second, that K Mart violated the 30–day notice provision of paragraph 1(b) by informing Three D on November 7, 1986 that it would have to take part in a "going out of business sale" beginning later that month; third, that K Mart violated an implied duty of good faith and fair dealing in the performance of the contract by encouraging Three D to expand its operations and then terminating the agreement.

 On its face, the first claim seems well suited for 12(b)(6) dismissal. The terms of the contract appear clear and unambiguous: The license for each department opened by Three D would terminate in four years, unless K Mart chose to terminate it sooner, pursuant to the 30–day

notice requirement. A number of courts have held that "where [the] contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and proper." *Goodman v. Board of Trustees of Community County*, 498 F.Supp. 1329 (N.D.Ill.1980) (dismissing breach of contract claim). Nevertheless, Michigan substantive [1] law supports Three D's position that dismissal on a 12(b)(6) motion would be inappropriate here.

Michigan courts permit the introduction of extrinsic or parol evidence both "to establish the existence of, and to ultimately resolve, a contract ambiguity." *Sawyer v. Arum*, 690 F.2d 590, 593 (6th Cir.1982).

> Even where the writing is not ambiguous on its face, the circumstances under which the parties' contract may be looked at to establish an ambiguity, as well as to indicate the proper choice of possible meanings, and the common knowledge and the understanding of the parties themselves as shown by their previous negotiations is sometimes such a circumstance.

*Goodwin v. Oregon E. Coe Pontiac*, 392 Mich. 195, 220 N.W.2d 664, 668 (1974). Yet, the court on a 12(b)(6) motion may not consider such extraneous matters. Thus, when a party contends that a facially unambiguous contract in fact contains an ambiguity, and the meaning asserted by the party claiming ambiguity is not "impossible," *Stark v. Budwarker, Inc.*, 25 Mich. App. 305, 181 N.W.2d 298, 300 fn. 3 (1970), "the litigation *must* progress beyond the initial pleading." *Marmon Group v. Rexnord*, 822 F.2d 31, 34 (7th Cir.1987) (emphasis added).[2]

---

**1.** In this diversity action, Illinois conflict-of-law rules govern. *See Klaxton Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–98, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Illinois, "the law applicable to a contract is that which the parties intended, assuming such an intent." *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 529, 322 N.E.2d 454 (1975). Here, the parties have agreed, in both the contract and their legal arguments, that Michigan law should apply. This court will abide by that agreement.

**2.** Although *Marmon* was decided pursuant to Illinois contracts law, the equivalence of the Michigan and Illinois parol evidence rule for establishing and resolving contract ambiguity makes the conclusion in *Marmon* fully applicable here. *Compare Sunstream Jet Express v. International Air Serv. Co.*, 734 F.2d 1258, 1268 (7th Cir.1984) (explaining Illinois parol evidence rule).

A number of commentators have discussed the split in the courts over the admissibility of parol evidence to establish ambiguity in a facially unambiguous written agreement. Farns-

In this case, Three D claims that, notwithstanding the apparent clarity of the duration and termination provisions of the contract, evidence regarding the negotiations prior to the contract will demonstrate that these provisions are ambiguous.

> More specifically, it is [Three D's] position that the basic 48–month term provided for in paragraph 1(a) governs the licensing arrangement overall, while paragraph 1(b) provides [K Mart] the flexibility required in the operation of any large multi-state chain of retail stores to close (on thirty days' notice) individual stores in the course of the normal periodic relocations and other changes in the ordinary course of the ongoing business. Thus [Three D] contends that [K Mart] does not have the right under paragraph 1(b) to terminate the agreement *in toto* by prematurely ending the entire Designer Depot operation.

Pl. Mem. at 6. Because this construction of the two provisions would be "possible," Three D may present extrinsic evidence to support it. The 12(b)(6) motion to dismiss this claim must be denied.

■ Similar reasoning applies to Three D's second claim for relief under Count I. Three D contends that K Mart breached the 30–day notice provision of the contract when it informed Three D in early November that it would have to take part in the close-out sales beginning in late November. In Three D's view, such required participation in a close-out sale constituted "termination" under the lease agreement, so K Mart's failure to give Three D 30 days' notice of the store-wide sales was a breach of the agreement. Again, determining the validity of Three D's claim requires an examination of the meaning of an ambiguous term. Whether required participation in close-out sales constitutes "termination" for the purposes of the agreement is a factual issue which cannot properly be resolved in a motion to dismiss under Rule 12(b)(6).

■ Finally, Three D claims in Count I that K Mart breached an implied duty of good faith and fair dealing under the contract. This claim, however, fails to state any set of facts upon which relief could be granted.

Michigan courts have implied duties of good faith in the performance of certain contracts, and have cited with approval § 205 of the Second Restatement of Contracts. *See Stark v. Budwarker, Inc.*, 25 Mich.App. 305, 181 N.W.2d 298, 301 (1970). This section states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." Thus, even if the contract did permit K Mart to terminate the contract upon 30 days' notice, K Mart was obligated to exercise this power in good faith. *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 408 N.E.2d 1370, 1373 (1980) (implying duty of good faith in franchise agreement providing for termination upon 90 days' notice).

Nevertheless, Three D states not a single fact to support a claim that K Mart violated this duty by terminating the contract.[3] On the contrary, the facts set forth by Three D demonstrate the propriety of K Mart's action. K Mart terminated the license agreement only because it had decided to close all of the Designer Depot stores. The duty of good faith did not require K Mart to keep an entire chain of stores in operation for the benefit of a single licensee.[4] Accordingly, Three D's

---

worth, *Contracts*, § 7.12 at 503–05 (1980). Restatement (Second) of Contracts, § 214, Comment b. They have not, however, discussed the implications of this split for motions to dismiss.

**3.** Although Three D suggests in the complaint that K Mart may have breached its duty of good faith by failing to give Three D 30 days' notice of the close-out sales, the memorandum in opposition to the motion to dismiss indicates that this allegation merely repeats the claim for breach of the express notice provision of the

agreement. Pl. Mem. at 8. If requiring Three D to participate in the sale constituted a "termination" of the agreement, then K Mart violated the 30–day notice provision. If it did not, then K Mart had no obligation to give Three D *any* notice of the sale.

**4.** In his comprehensive analysis of the common law duty to perform in good faith, Professor Burton summarizes the duty as follows:

> Discretion in performance may be exercised legitimately for the purposes reasonably con-

claim that K Mart breached the implied duty of good faith must be dismissed.

■ In summary, Three D has stated a claim for relief under the first two theories presented in Count I, but has failed to state a claim under the third theory. This ruling does not, however, resolve K Mart's motion to dismiss Count I. For in addition to seeking dismissal of Count I under Rule 12(b)(6), K Mart also seeks dismissal of this count pursuant to Rule 10(b).

> Rule 10(b) states, in pertinent part, that:
>
> Each claim founded upon a separate transaction or occurrence ... shall be stated in a separate count ... whenever a separation facilitates the clear presentation of the matters set forth.

Three D has violated this rule in Count I. The first claim asserts that K Mart breached the four-year provision of the license agreement by closing the Designer Depot chain in January, 1987. The second claim contends that K Mart violated the 30–day notice provision by holding the close-out sales in late November. The third claim states that K Mart violated its implied duty of good faith both by closing the stores in January and by holding the close-out sales in November. The failure to present these claims in separate counts has resulted in unclear allegations and imprecise memoranda.

■ Although Rule 10(b) does not specify the appropriate remedy for violations of its provisions, courts retain the inherent power to order compliance with the rule. *See United States v. American Linen Supply Co.*, 141 F.Supp. 105, 116 (D.C.Ill. 1956); 5 *Wright & Miller, Federal Practice & Procedure* § 1324 at 477–79 (1969). Accordingly, this court has decided to dismiss Count I in its entirety. Three D will have 30 days to replead the allegations of

Count I in accordance with the above ruling.

*Count II*

■ In Count II, Three D alleges that K Mart committed "silent fraud." Under this theory, K Mart committed fraud not by making false representations to Three D, but rather by failing to make certain disclosures. First, K Mart entered into the 48–month agreement with Three D without revealing its intention to terminate the agreement "whenever [it] became burdensome." Then, K Mart encouraged Three D to expand its operations despite K Mart's intention of closing the Designer Depot stores before Three D could recoup its investment. K Mart seeks dismissal of this count under Rules 9(b) and 12(b)(6). The motion for dismissal of Count II will be granted.

The first problem Three D faces in this count is the general rule that silence does not constitute fraud. See *United States Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 79 (Mich.1981). Since Three D alleges that K Mart committed fraud by *failing* to reveal its intentions concerning the Designer Depot stores, this rule would seem to bar Three D's fraud claim.

Three D, however, points to a number of cases in which Michigan courts have held that, in some situations, silence may constitute fraud. When a legal or equitable duty of disclosure exists, "fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions." *United States Fidelity & Guaranty Co. v. Black*, 412 Mich. 99, 313 N.W.2d 77, 79 (Mich.1981); *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 78 N.W.2d 209 (1956). Furthermore, although the courts have not defined with precision when an equitable duty of disclosure

---

templated by the parties, including ordinary business reasons. It cannot be exercised for the purpose of recapturing foregone opportunities, for such conduct harms the expectation interest of the dependent party.

Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 *Harv.L. Rev.* 369, 395 (1980). This theory supports a

rejection of Three D's claim. Clearly, Three D could not reasonably have expected, at the time it signed the licensing agreement or at the time it expanded its operations, that K Mart would keep open an entire chain of stores solely to permit Three D to recoup its investment or obtain a profit.

arises, they have imposed such a duty on parties engaged in business transactions, particularly where one party has made partial and misleading disclosures of information during the course of the relationship. *See Great America Ins. v. Dunn Corp.,* 580 F.Supp. 1287, 1289 (W.D.Mich.1984); *Strand v. Librascope,* 197 F.Supp. 743, 753 (W.D.Mich.1961).

Three D claims that K Mart's actions and statements implied that the Designer Depot stores would remain open for at least four years, and that this misleading implied representation, combined with the ongoing relationship created by the agreement, imposed upon K Mart an equitable duty to disclose its intentions and deliberations regarding the stores. However, in focusing on the equitable duty of disclosure cases, Three D has ignored another fundamental principle of Michigan fraud law.

Michigan courts have frequently "affirmed the rule that an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. International Harvester,* 398 Mich. 330, 247 N.W.2d 813 (1976); *Boston Piano and Music Co. v. Pontiac Clothing Co.,* 199 Mich. 141, 165 N.W. 856 (1917).

K Mart's implied representation that the Designer Depot stores would remain open for at least four years amounts to nothing more than a future promise. K Mart's failure to comply with this promise generally could not give rise to an action for fraud.

To be sure, there does exist one exception to the general rule. "[A] person who makes a promise in 'bad faith', without any intention of performing it at the time that the promise is made, may subject himself to liability for fraud." *Mohammed v. Union Carbide,* 606 F.Supp. 252, 258 (E.D. Mich.1985). However, this exception cannot save Three D's claim.

In *Hi-Way Motor Co. v. International Harvester,* 398 Mich. 330, 247 N.W.2d 813 (1976), a franchisee/truck dealer sued a franchisor/manufacturer when the latter granted a franchise to another dealer.

Plaintiff conceded that his written contract with the manufacturer did not grant him an exclusive franchise. Nonetheless, he claimed that the manufacturer defrauded him by repeatedly stating that he would be the sole franchisee without intending to keep this "promise."

The Supreme Court of Michigan rejected plaintiff's claim. It acknowledged that "a fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." *Id.,* 247 N.W.2d at 816. It held, however, that plaintiff had not established that, when the manufacturer made the "promise" of an exclusive franchise, it "had *no intention* of fulfilling it." *Id.* at 817 (emphasis added).

Although that case involved active rather than silent fraud, its reasoning applies to this case. Three D contends that, even if K Mart was not bound contractually to a four-year term, its implied "promise" that the stores would remain open for four years, coupled with its undisclosed intentions of terminating the agreement sooner, gave rise to an action for fraud. Yet, Three D does not allege that K Mart, either at the time it executed the agreement or at the times it encouraged Three D to expand, *knew* that it would soon be closing the chain. Instead, the complaint states only that K Mart was considering this move. Absent an allegation that K Mart had no intention of keeping the stores in operation for four more years, Three D cannot state a claim for fraud.

## CONCLUSION

Defendant K Mart's motion to dismiss Counts I and II of the complaint is granted. Plaintiff may file an amended complaint within 30 days of this Order.